IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMERICAN COMMERCIAL BARGE LINE LLC | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 4:24-cv-1387<br>) |
| MASSMUTUAL ASSET FINANCE LLC | )<br>)<br>) |
| Defendant. | ) |

# COMPLAINT

COMES NOW Plaintiff American Commercial Barge Line LLC ("ACBL" or "Plaintiff"), by and through its undersigned attorneys, and for its Complaint against Defendant MassMutual Asset Finance LLC ("MassMutual" or "Defendant"), states as follows:

### Jurisdiction and Venue

1. This Court has admiralty jurisdiction under 28 U.S.C. § 1333. Plaintiff designates its claims as admiralty or maritime claims. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for any related state law claims. The disputes in this case arise out of a maritime contract, namely, a charter for the hire of vessels. This court has power to grant equitable remedies under its admiralty jurisdiction.

2. The causes of action herein arise from MassMutual and its predecessor by assignment transacting business and making a contract in this district with Plaintiff's predecessor by assignment. ACBL's predecessor by assignment, ACBL River Operations LLC (f/k/a AEP River Operations and AEP MEMCO LLC) ("River Operations") had its principal place of business in Chesterfield, Missouri at all relevant times.

3. The vessels that were the subject of the said contract and business have, at all relevant times, and pursuant to the contract at issue, had their hailing port/port of record in this district, namely, in St. Louis, Missouri.

4. Venue is proper because valid service may be made upon the Defendant in this district and there is admiralty jurisdiction in this district, and because a substantial part of the events or omissions giving rise to the claim occurred in this district and/or a substantial part of property that is the subject of the action is situated in this district.

## Parties

5. Plaintiff ACBL is a Delaware limited liability company with its principal place of business located in Indiana.

6. Defendant MassMutual is a Delaware limited liability company with a principal place of business located in Massachusetts.

## Allegations Common to All Counts

7. On or about May 21, 2008, SunTrust Equipment Finance & Leasing Corp. ("SunTrust") as "Owner," and River Operations as "Charterer," entered into a Charter Agreement and Charter Supplement No. 1 (together, the "Barge Lease"). A true and accurate copy of the Barge Lease is attached hereto as Exhibit 1, and all provisions thereof are fully incorporated herein by reference.

8. Under the Barge Lease, Owner purchased seventeen (17) covered hopper barges from a third party, and bareboat chartered them to Charterer.

9. On information and belief, in or about September 2014, SunTrust assigned all of its rights and interests under the Barge Lease to MassMutual.

10. On or about February 16, 2017, River Operations assigned all of its right, title, interest and obligations in, to and under the Barge Lease and other operative agreements to ACBL, under a Settlement, Assignment and Amendment Agreement ("Assignment") between MassMutual, River Operations and ACBL. A true and accurate copy of the Assignment is attached hereto as Exhibit 2, and all provisions thereof are fully incorporated herein by reference.

11. The Assignment also amended and supplemented the Barge Lease, in pertinent part, as follows:

> 3. <u>Amendments to Barge Lease</u>. The Barge Lease and the other Operative Agreements are hereby amended and supplemented as follows:
>
> (a) Each payment of Basic Charter Hire shall be paid in advance, commencing with the Basic Charter Hire payment due on July 1, 2017. In furtherance of the foregoing, the parties acknowledge:
>
> (i) all Charter Hire Payment Dates, commencing with July 1, 2017, are accelerated by three (3) months, such that the Basic Charter Hire payment previously due on July 1, 2017 shall now be due on April 1, 2017, the Basic Charter Hire payment previously due on October 1, 2017 shall now be due on July 1, 2017, etc.;
>
> (ii) The Stipulated Loss Values and Termination Values reflected on Schedule II for all Charter Hire Payment Dates from and after April 1, 2017 are hereby replaced with the corresponding values set forth on Exhibit B attached hereto, which reflect adjustments made to the applicable values to account for the acceleration of the Charter Hire Payment Dates noted above; and
>
> (iii) the Basic Charter Hire payment currently due under the Barge Lease on April 1, 2017 shall be paid on April 1, 2017.
>
> (b) Upon execution of this Agreement, the Charterer shall remit to the Owner the Basic Charter Hire otherwise payable on July 1, 2026, October 1, 2026, January 1, 2027 and April 1, 2027 (which dates reflect the 3-month acceleration of Charter Hire Payment Dates noted above) (collectively, the "Prepaid Hire"). The Charterer hereby grants a security interest to the Owner in all of the Charterer's right and interest in and to the Prepaid Hire. The Owner shall hold the Prepaid Hire as cash collateral to secure the Charterer's obligations under the Barge Lease. Charterer hereby authorizes the Owner to apply the Prepaid Hire to all amounts payable by the Charterer under Section 14 of the Charter following the occurrence of any Event of Default. The Owner shall not be obligated to segregate the Prepaid Hire from its general funds. All interest and other income payable with respect to the Prepaid Hire shall be for the account of the Owner. Assuming no Event of Default shall then be continuing, the Owner shall return all Prepaid Hire not otherwise applied pursuant to this Section 3(b) upon expiration of the Term.

Exhibit 2 at pp. 1-2, ¶ 3.

12. On August 16, 2017, MassMutual and ACBL entered into an Amendment to Barge Lease ("Amendment"). A true and accurate copy of the Amendment is attached hereto as Exhibit 3, and all provisions thereof are fully incorporated herein by reference. The Amendment was made to further amend the Barge Lease because the Assignment "did not accurately capture the parties' agreement with respect to the payment of Basic Charter Hire." Exhibit 3 at p. 1 ¶ B.

13. The Amendment provided, in pertinent part:

> 1. <u>Amendments to Barge Lease</u>. The Barge Lease and the other Operative Agreements are hereby amended and supplemented to provide that:
>
>     (a) the Basic Charter Hire and Charter Hire Payment Dates reflected on Schedule I to the Supplement for all Charter Hire Payment Dates from and after October 1, 2017, as previously replaced in accordance with the Agreement, are hereby further replaced with the new Charter Hire Payment Dates and Basic Charter Hire payments set forth on Exhibit A attached hereto; and
>
>     (b) the Stipulated Loss Values and Termination Values reflected on Schedule II to the Supplement for all Charter Hire Payment Dates from and after April 1, 2017, as previously replaced in accordance with the Agreement, are hereby further replaced with the corresponding values set forth on Exhibit B attached hereto.
>
> \* \* \*

Exhibit A: Charter Hire Payment Dates and Basic Charter Hire from and after October 1, 2017

| Charter Hire Payment Dates as originally set forth in Charter | New Charter Hire Payment Dates | Basic Charter Hire |
|---|---|---|
| 1/1/2018 and 4/1/2018 (payments 38 – 39) | August 18, 2017 | $312,829.02 |
| 7/1/2018, 10/1/2018, 1/1/2019 and 4/1/2019 (payments 40 – 43) | April 1, 2018 | $625,658.04 |
| 7/1/2019, 10/1/2019, 1/1/2020 and 4/1/2020 (payments 44 – 47) | April 1, 2019 | $625,658.04 |
| 7/1/2020, 10/1/2020, 1/1/2021 and 4/1/2021 (payments 48 – 51) | April 1, 2020 | $625,658.04 |
| 7/1/2021, 10/1/2021, 1/1/2022 and 4/1/2022 (payments 52 – 55) | April 1, 2021 | $625,658.04 |
| 7/1/2022, 10/1/2022, 1/1/2023 and 4/1/2023 (payments 56 – 59) | April 1, 2022 | $625,658.04 |
| 7/1/2023, 10/1/2023, 1/1/2024 and 4/1/2024 (payments 60 – 63) | April 1, 2023 | $625,658.04 |
| 7/1/2024, 10/1/2024, 1/1/2025 and 4/1/2025 (payments 64 – 67) | April 1, 2024 | $625,658.04 |
| 7/1/2025, 10/1/2025, 1/1/2026 and 4/1/2026 (payments 68 – 71) | April 1, 2025 | $625,658.04 |
| 7/1/2026 (payment 72) | April 1, 2026 | $156,414.51 |

Exhibit 3 at pp. 1, 4.

14.     Under the original Barge Lease, Section 6(b), and Supplement II-1, II-2, payments of charter hire applicable to each calendar quarter in the charter's Basic Term were to be paid at the end of that calendar quarter. Specifically, Charterer was to "pay to the Owner on the last day of each calendar quarter Basic Charter Hire for each Vessel during the Basic Term therefor, commencing on the Charter Hire Payment Date first following the Basic Term Commencement Date for such Vessel and on each Charter Hire Payment Date thereafter in the amount specified in the Charter Supplement," (Section 6(b)), and the Charter Hire Payment

5

Dates as specified in the Supplement started at the end of the first calendar quarter of the Basic Term.

15. However, pursuant to the Assignment and the Amendment, the payment dates were amended such that ACBL's payments of Basic Charter Hire applicable to each calendar quarter were to be paid in advance at the beginning of the next four calendar quarters by an annual lump sum paid each April 1st, which payment would be applied to the following four calendar quarters.

16. Pursuant to the above provisions of the Assignment and Amendment (including Exhibit A to the Amendment), ACBL was to make Basic Charter Hire payments in annual lump sums, paid in advance, which would be applied to the four upcoming quarterly periods of the charter.

17. ACBL paid all charter hire due under the Barge Lease as amended in the Assignment and Amendment, and otherwise complied with the said agreements.

18. Under the Barge Lease, Section 5(a), the Basic Term of the charter period for each vessel began July 1, 2008, and was to end either June 30, 2027 or when the charter was "sooner terminated with respect to such vessel pursuant to the provisions" of the Barge Lease.

19. Under the Barge Lease, Section 5(c), after expiration or earlier termination of the Basic Term, the obligations of ACBL under the Barge Lease, Assignment and Amendment terminated.

20. Under the Barge Lease, Section 18(b), ACBL had an early buyout option ("EBO") by which it could purchase all seventeen barges sixteen years after the commencement of the Basic Term of the charter (July 1, 2024), thus terminating the Basic Term and ending the charter.

6

21. ACBL exercised the EBO.

22. Prior to completing the EBO, in late March 2024, ACBL paid one quarter's (three months') worth of charter hire to MassMutual in the amount of $156,414.51, representing the remaining charter period of April through June 2024, up to the then-planned buyout date of July 1, 2024.

23. However, MassMutual's representative insisted that the whole advance annual payment of $625,658.04 was due on April 1, 2024 despite the pending EBO. ACBL then paid MassMutual another $469,243.53, representing the remainder of the $625,658.04 advance annual payment of charter hire. ACBL expected to be credited the unused portion of the charter hire when it later completed the buyout.

24. Closing on the EBO was completed as of August 1, 2024. While the EBO was originally set to close on July 1, 2024, it was extended by consent of MassMutual.

25. As a result of the EBO, the barges were no longer owned by MassMutual or chartered to ACBL, and the charter term was properly terminated.

26. MassMutual did not credit ACBL for the unused portion of the advance charter hire payment in the amount of $469,243.53.

27. MassMutual kept the $469,243.53 in unearned/unused charter hire for the period through March 2025.

**Count I: Breach of Contract**

28. ACBL realleges and incorporates by reference the allegations contained in all foregoing paragraphs 1-27 as if fully stated herein.

29. The Barge Lease, Assignment and Amendment between ACBL and MassMutual are valid and enforceable.

30. Under the Barge Lease, Assignment and Amendment, ACBL's annual advance charter hire payments were applicable to future twelve-month segments of the Basic Term of the charter.

31. Under the Barge Lease, Assignment and Amendment, ACBL only owed charter hire for periods for which there was a charter, that is, periods before termination of the Basic Term of the charter.

32. The Basic Term and the charter in general were terminated when ACBL exercised the EBO.

33. MassMutual was not entitled under the Barge Lease, Assignment and/or Amendment, to payment of charter hire applicable to periods after termination.

34. MassMutual breached the Barge Lease, Assignment and Amendment by: (1) requiring a full year's advance of prepaid charter hire when exercise of the EBO was pending; and/or (2) failing to credit or return the prepaid and charter hire for the periods after exercise of the EBO.

35. By reason of MassMutual's breach of the Barge Lease, Assignment and Amendment, ACBL has sustained damages in the sum of $469,243.53, which has not been paid or credited although duly demanded, plus interest and costs.

WHEREFORE, ACBL prays that judgment be entered in favor of ACBL and against MassMutual, for the full amount of ACBL's damages for the charter hire paid by ACBL and not applicable to periods before the EBO, and for costs, pre-judgment and post-judgment interest, attorneys' fees, and such other and further relief to which it may be entitled.

## Count II: Unjust Enrichment

36. ACBL realleges and incorporates by reference the allegations contained in all foregoing paragraphs 1-35 as if fully stated herein.

37. MassMutual received a benefit from ACBL by receiving the advance charter hire payment applicable to periods after the EBO in the amount of $469,243.53.

38. The said benefit was at ACBL's expense, in that ACBL paid it.

39. The $469,243.53 portion of the $625,658.04 advance charter hire ACBL paid in March-April 2024 which was for periods after the EBO was unused by ACBL for charter, and was unearned by MassMutual, and it was unjust for MassMutual to demand and retain the amount of such charter hire payment.

40. As a result of MassMutual demanding a full year's advance of prepaid charter hire when exercise of the EBO was pending, and failing to credit or return the charter hire for the periods after the EBO, MassMutual has been unjustly enriched.

WHEREFORE, ACBL prays that judgment be entered in favor of ACBL and against MassMutual, for restitution in the full amount of the charter hire paid by ACBL and not applicable to periods before the EBO, and for costs, pre-judgment and post-judgment interest, attorneys' fees, and such other and further relief to which it may be entitled.

/s/ Ronald E. Fox
Ronald E. Fox, #29487(MO)
Aaron C. Sherman, #70454(MO)
FOX SMITH, LLC
One S. Memorial Drive, 12th Floor
St. Louis, Missouri  63102
(314) 588-7000
(314) 588-1965 (Fax)
rfox@foxsmithlaw.com
asherman@foxsmithlaw.com
Attorneys for Plaintiff